CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
SEP 01 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES J. SMITH, ) | Civil Action No. 7:10-cv-00263 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| W. DAVIS, et al., ) | By: Samuel G. Wilson |
| Defendants. ) | United States District Judge |

Plaintiff Charles J. Smith, a Virginia state inmate proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants subjected him to cruel and unusual living conditions, used excessive force against him, and denied him due process. The defendants moved for summary judgment. Smith timely responded and this matter is now ripe for disposition. For the reasons stated herein, the court grants summary judgment in part and denies it in part.

## I.

At all times relevant to this action, Smith was incarcerated at Red Onion State Prison and was housed in the segregation unit. Smith's allegations against the defendants arise out of a series of events occurring between August 21, 2009 and January 18, 2010. On August 21, 2009, Smith alleges that Officer Davis dumped his breakfast on the floor in front of Smith's cell to retaliate for complaints Smith had made to the Department of Justice and the Department of Corrections. Davis denies the allegation and asserts that he opened Smith's tray slot and placed the breakfast in front of the food service window, but that Smith failed to comply with the tray-slot procedure. Consequently, Smith did not eat breakfast that morning, which allegedly caused him "great hunger pangs, weakness, dizziness, proximate loss of consciousness, and severe mental anguish/emotional distress." (Compl. at 7.)

Later that morning, Davis cancelled Smith's shower entitlement for the day. Smith claims that he alerted Sergeant Trapp that Davis had not given him breakfast and had cancelled his shower, but Trapp refused to give Smith another breakfast or restore his shower privilege. Smith then completed an emergency grievance form, slid the form through his cell door, and informed Officer Large that he wished to file an emergency grievance about his breakfast and shower. Large allegedly refused to sign or process the form. Later, Officer Ingle also allegedly refused to process the form.

The next day, Davis cancelled Smith's recreation for the day. Smith alleges that he informed Trapp of the cancellation, but Trapp refused to reinstate his recreation. Davis also cancelled Smith's recreation and shower privileges on August 26 and 27, 2010, and again on September 9 and 18, 2010. Smith alleges that these cancellations were retaliatory, but Davis asserts that the cancellations were due to Smith's refusal to comply with the tray-slot procedure and Smith's threats to staff members.

On January 18, 2010, Davis and Officer Thacker escorted Smith back to his cell after Smith met with his attorney. Smith was secured with leg restraints and his hands were cuffed behind his back. Upon returning to his cell, Smith knelt and the officers removed his leg restraints. The officers exited the cell, secured the door, and instructed Smith to stand facing away from the door with his hands near the tray slot so that they could remove his handcuffs. Smith alleges that soon after he stood, Davis applied a wristlock to Smith's left wrist and pulled Smith's left arm through the tray slot. Davis continued to apply the wristlock until Sergeant McCowan came to the scene several minutes later. Davis then released the wristlock and re-cuffed Smith. Smith alleges that he did nothing to provoke Davis' actions, while Davis maintains that Smith attempted to turn and grab him. As a result of the prolonged wristlock and

2

Davis allegedly jerking Smith's arm through the tray slot, Smith claims that he suffered pain, nerve damage, and a cut on his arm. Defendants argue that Smith's injuries, if any, were minor.

During the struggle, the key broke while in Smith's handcuffs. Consequently, the officers had to cut the handcuffs from Smith's wrists. McCowan, Davis, and Thacker escorted Smith into the building's main vestibule to remove the handcuffs. The parties also dispute the cause of the next event,[1] but the officers ordered Smith to remove his clothing, removed Smith's handcuffs, and applied ambulatory restraints. Smith's hands were handcuffed in front of him, his ankles were shackled, and a chain connected all of the restraints via a central hub near Smith's waist.[2] Smith alleges that McCoy then placed a mesh mask over Smith's head and someone dressed Smith in a safety smock while a nurse examined him. Officers removed Smith's ambulatory restraints the next day, approximately twenty-one hours after they were first applied. Smith alleges that the ambulatory restraints prevented him from raising his arms above his waist, caused him pain,[3] and made it difficult to eat, sleep, or use the bathroom. Defendants argue that the ambulatory restraints provided for adequate range of motion and that Smith did not suffer a cognizable injury from wearing them overnight.

## II. Unexhausted Claims

The court must first determine whether Smith's claims are properly before the court. The Prisoner Litigation Reform Act ("PLRA") requires a prisoner to first exhaust his administrative

---

[1] Smith alleges that the defendants placed him in ambulatory restraints as retaliation for having filed complaints against them in the United States Department of Justice and the Virginia Department of Corrections Internal Affairs Unit. Defendants allege that they placed him in ambulatory restraints after he became "belligerent" and threatened the lives of officers.

[2] According to the affidavit of Sgt. McCowan, ambulatory restraints are the first level of restraint utilized in the management of an inmate's disruptive behavior. They are used to control assaultive, disruptive, or unmanageable inmates in situations where there is a danger that they will injure themselves or others. They are not used as punishment. Ambulatory restraints are removed from the inmate when he no longer poses a danger to himself or others, but the period is not to exceed forty-eight hours without the approval of the Regional Director.

[3] Smith was examined by a nurse when the restraints were removed. The nurse noted that Smith complained of pain in his right arm and that he had a superficial abrasion. He was given antibiotic ointment and one dose of Motrin. The court notes that there is no evidence that the arm pain and abrasion were caused by the ambulatory restraints as opposed to the earlier incident in his cell that led to the key breaking off in the cuffs.

3

remedies before bringing suit under § 1983 challenging the conditions of his confinement. 42 U.S.C. § 1997e(a) (2006); Woodford v. Ngo, 548 U.S. 81, 85 (2006). Smith did not file a grievance regarding the September 18, 2009 incident in which Davis allegedly denied Smith his shower and recreation privileges. Therefore, the court finds that this claim is not properly before the court, and dismisses it without prejudice as unexhausted.

### III. Missed Shower, Breakfasts, and Recreation

Smith alleges that the defendants subjected him to cruel and unusual living conditions by depriving him of breakfast on one occasion and of showers and recreation on five occasions. Defendants have moved for summary judgment on the grounds that the alleged conduct does not rise to the level of a constitutional violation. The court agrees and grants defendants' motion.[4]

The Eighth Amendment prohibits "cruel and unusual punishment" of those convicted of crimes. U.S. Const. amend. VIII; Wilson v. Seiter, 501 U.S. 294 (1991) (citing Robinson v. California, 370 U.S. 660, 666 (1962)). While the Constitution does not require that conditions of confinement be "comfortable," prison officials have an affirmative duty to provide prisoners with adequate food, shelter, clothing, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Supreme Court has identified two elements necessary to support an Eighth Amendment claim challenging prison conditions: first, an objective element, i.e., whether the deprivation was sufficiently serious to constitute cruel and unusual punishment; and second, a subjective element, i.e., whether the officials acted with a sufficiently culpable state of mind. Wilson, 501 U.S. at 294, Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). To meet the objective element, a plaintiff must allege facts sufficient to show either that he has sustained a

---

[4] Summary judgment is proper where, viewing the facts in the light most favorable to the plaintiff, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when a rational fact-finder, considering the evidence in the summary judgment record, could find in favor of the nonmoving party. Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009).

4

serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Helling v. McKinney, 509 U.S. 25, 30 (1993); Strickler v. Waters, 989 F.2d 1375, 1380–81 (4th Cir. 1993).

The deprivation of one meal and a handful of showers and recreation, neither harmed Smith nor put him at any unreasonable risk of serious harm and, thus, the court finds that Smith has not demonstrated a sufficiently serious deprivation. Because these alleged deprivations were not sufficiently serious, the court finds that Smith has not demonstrated that the defendants subjected him to cruel or unusual living conditions. Accordingly, the court dismisses Smith's claims regarding his missed breakfast, showers, and recreation.[5]

### IV. Wristlock Incident

Smith claims that he was subjected to excessive force in violation of the Eighth Amendment when Davis placed him in a wristlock, allegedly without provocation and for the sole purpose of inflicting pain, and that Ray and Garman were deliberately indifferent to Davis's actions. Because there is a dispute of material fact as to his claim against Davis, the court denies his motion for summary judgment. However, because Smith fails to show that Ray or Garman were personally involved in Davis's actions, the court grants their motions for summary judgment.

Excessive force claims are examined by inquiring whether the prison officials applied force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992). In making this determination, courts should examine the need for the application of force, the relationship between the need for

---

[5] To the extent Smith claims that the defendants violated his First Amendment rights by failing to process his grievance concerning the denial of a meal, his claim fails. An inmate has no constitutional right to participate in the grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, the court grants the defendants' motion for summary judgment as to this claim.

5

force and amount of force used, the extent of the injury inflicted, the threat to the safety of prison staff or other inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. Whitley v. Albers, 475 U.S. 312, 321 (1986). The absence of a significant injury alone is not dispositive of an excessive force claim. Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010). The extent of injury is merely one factor indicating whether the force was excessive. Id. A prisoner's good fortune in escaping serious harm does not foreclose a prison official's liability for applying force maliciously or sadistically. Id.

During the January 18, 2010, incident, Davis escorted Smith back to his cell after Smith met with his attorney. After closing Smith's cell door, Davis asked him to turn around, with his hands near the cell door, so that Davis could remove his handcuffs. Smith alleges that he remained compliant at all times, and that Davis applied a wristlock suddenly and without reason after removing Smith's handcuffs. Davis, however, alleges that he only applied the wristlock after Smith attempted to turn and grab Davis. Because both parties have submitted differing factual accounts on the issue of whether Smith's actions necessitated Davis's use of physical force, and the extent of the force Davis applied, Smith's claim cannot be resolved on summary judgment. Therefore, the court denies defendant Davis's motion for summary judgment as to this claim.

Smith also alleges that Ray and Garman are liable for the injuries he sustained during the wristlock incident even though they were not present during that incident. Because *respondeat superior* does not support liability under § 1983, Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n.58 (1978), Smith's claims against Ray and Garman only survive summary judgment if a reasonable jury could find that Davis's use of force "effectuate[d] [their] official policy or custom," or they "tacitly approved" of Davis's actions. Slakan v. Porter, 737 F.2d 368, 372–73

6

(4th Cir. 1984). Smith provided no evidence that Davis's alleged use of excessive force resulted from an official policy or custom, or that Ray or Garman approved of Davis's alleged use of excessive force. Smith only asserts that Ray and Garman should have controlled Davis after being on notice that Davis had previously denied Smith showers and recreation. Even if Ray and Garman had knowledge of these actions, their conduct does not support an inference that they recklessly disregarded Smith's safety. Accordingly, the court dismisses Smith's claims against Ray and Garman.[6]

### V. State Law Claim—Assault and Battery

Smith asserts that Davis committed the intentional torts of assault and battery[7] when he placed Smith in the wristlock.[8] Because there are genuine issues of material fact as to Smith's tort claims against Davis, the court denies the defendants' motion for summary judgment on these claims.

"The tort of battery is an unwanted touching which is neither consented to, excused, nor justified." Koffman v. Garnett, 574 S.E.2d 258, 261 (Va. 2003).[9] The tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in the other person's mind a reasonable apprehension of an imminent battery. Id. As explained earlier in this opinion, the parties disagree as to the circumstances surrounding the wristlock incident. Because there is a genuine dispute as to the

---

[6] The court also grants the defendants' motion for summary judgment on Smith's claim for injunctive relief against Ray and Garman because they are already legally required to do everything that Smith requests from them and the court will not issue an injunction telling Ray and Garman to "obey the law."

[7] Virginia sovereign immunity law does not preclude intentional tort claims, irrespective of whether defendants acted within or without the scope of their employment. Elder v. Holland, 155 S.E.2d 369, 372–73 (Va. 1967). Smith only alleges intentional torts in this case.

[8] Because this torts arises out of the same occurrence as an underlying federal claim cognizable under § 1983, this court may exercise supplemental jurisdiction over these state law claims. 28 U.S.C. § 1367(a) (2006).

[9] The court notes that prison guards are legally justified in using reasonable force to execute their lawful duties. Cf. Unus v. Kane, 565 F.3d 103 (4th Cir. 2009) ("Virginia recognizes that police officers are legally justified in using reasonable force to execute their lawful duties."); Guitron v. Paul, No. 11-C-447, 2011 U.S. Dist. LEXIS 72795, at *5 (E.D. Wis. July 6, 2011) ("Prison life involves countless hardships [including] the use of reasonable force by guards.").

7

material facts surrounding this incident, Davis's motion for summary judgment is denied as to Smith's tort claim against Davis in his individual capacity. However, the court grants defendants' motion for summary judgment as to all of Smith's other tort claims.

### VI. Ambulatory Restraints—Excessive Force

Smith alleges that the defendants subjected him to excessive force by placing him in ambulatory restraints for approximately twenty-one hours. The court finds that Smith's allegations do not support an Eighth Amendment excessive force claim and, therefore, grants defendants' motion for summary judgment as to this claim.

In Holley v. Johnson, No. 7:08cv00629, 2010 U.S. Dist. LEXIS 65356 (W.D.Va. June 30, 2010), the court found that ambulatory restraints placed on an inmate for forty-eight hours was not excessive force and reasoned that "to the extent the restraints make [changing positions, stretching his muscles, eating his meals, sleeping, or using the toilet] less comfortable and more difficult to execute effectively, they fall squarely among those conditions of prison life that are 'restrictive and even harsh' without rising to the level of unconstitutional punishment." Id. Therefore, under the objective prong of an excessive force claim, the court found a temporary limitation on prisoners due to ambulatory restraints which "causes the inmate no physical injury other than temporary discomfort and embarrassment, simply cannot qualify as a use of force that is 'repugnant to the conscience of mankind.'" Id. (internal citations omitted). While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," the absence of a serious injury is not irrelevant. Wilkins, 130 S. Ct. at 1178. Instead, the extent of injury suffered is just one factor to account for in the

8

analysis, "but does not end it." See Hudson, 503 U.S. at 7 ("The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.").

In this case, not only did Smith fail to prove significant injury, but he also failed to show that the nature of force the ambulatory restraints imposed on him and their temporary application amounted to a use of force "repugnant to the conscience of mankind." Ambulatory restraints are designed and applied to limit a prisoner's movement, but not to inflict any measure of physical harm on him. Holley, 2010 U.S. Dist. LEXIS 65356, at *14. In Smith's complaint, he concedes that he was able to move around while in the ambulatory restraints. Although these restraints may have been uncomfortable, ambulatory restraints do not totally prevent a restrained prisoner from changing positions, stretching his muscles, sleeping, or eating his meals. See Jackson v. Morgan, 19 F. App'x 97 (4th Cir. 2001) (unpublished opinion); Holley, 2010 U.S. Dist. LEXIS 65356. Reviewing the facts in a light most favorable to Smith, the court finds that no reasonable jury could infer that the use of ambulatory restraints on Smith rises to the level of force that is "repugnant to the conscience of mankind."[10] Therefore, the court grants defendants' motion for summary judgment as to this claim.[11]

### VII. Ambulatory Restraints—Due Process

Smith alleges that the defendants violated his right to due process by failing to provide him with a formal notice specifically identifying what he did to provoke the officers' use of ambulatory restraints. The court finds that Smith had no protected liberty interest and, thus, the

---

[10] To the extent Smith claims that the defendants use of ambulatory restraints on him constituted assault and battery under Virginia law, the court declines to exercise supplemental jurisdiction over such a claim.

[11] To the extent Smith asserts that McCowan, McCoy, and Tate violated his First Amendment rights by restraining him for speaking, his claim fails. The officers had a legitimate penological interest in maintaining order and safety by ordering Smith to maintain silence while they cut off his handcuffs, and applying the ambulatory restraints was a method rationally related to achieving this interest. See Turner v. Safely, 482 U.S. 78, 89 (1987) (setting out the test for evaluating an alleged deprivation of constitutional rights in prison). Accordingly, the court grants the defendants' motion for summary judgment as to this claim.

9

defendants did not violate his right to due process. Accordingly, the court grants defendants' motion for summary judgment as to this claim.

A prisoner has no constitutionally protected liberty interest in remaining in a particular housing assignment. See Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir.1991). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Id. at 343. Liberty interests can arise from two sources, the Due Process Clause itself and state law. Sandin v. Conner, 515 U.S. 472, 484 (1995). The Due Process Clause may create a liberty interest when the restraint imposed upon an inmate exceeds his sentence in an "unexpected manner." Id. State prison policies may also create liberty interests that are protected by the Due Process Clause when they impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484–86 (holding that prisoner had no liberty interest in being free from segregated confinement because it did not exceed his sentence or constitute an atypical, significant deprivation under state prison regulations).

To determine whether an inmate possessed a liberty interest protected by the Due Process Clause in avoiding a form of restraints, the court must "compare the conditions to which [he was] exposed in [the challenged restraints] with those [he] could expect to experience as an ordinary incident of prison life." Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997). Despite dire conditions allegedly suffered by the inmate plaintiffs in the Beverati case during administrative segregation, the court found that while the conditions "were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to

10

them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." Id. at 504.

The Fourth Circuit has affirmed at least two judgments in which this court held that relatively lengthy periods in ambulatory restraints and confinement under conditions similar to those alleged by Smith were not so atypical as to create a protected liberty interest. See Madison v. Kilbourne, No. 7:04CV00639, 2006 U.S. Dist. LEXIS 52994, at *6 (W.D. Va. July 18, 2006) (finding no due process violation where inmate was held in ambulatory restraints for fourteen hours without a hearing), aff'd on this ground, vacated in part and remanded as to another claim, 228 Fed. App'x 293, 294 (4th Cir. 2007); Moore v. Miller, No. 7:08CV00614, 2009 U.S. Dist. LEXIS 2621 (W.D. Va. Jan. 15, 2009) (finding no due process violation where inmate was held in ambulatory restraints for twenty-six hours without a hearing), aff'd, 349 F. App'x 815 (4th Cir. 2009).

Smith offers nothing to support a different holding in this case. As a segregation inmate at a maximum-security prison, he is in leg irons with his hands cuffed behind his back, every time he leaves his cell—where he spends twenty-three out of twenty-four hours per day—unless he is in another secure area, such as the shower or recreation cage. When an inmate is transported to a location where he needs to be in a sitting position in a chair, such as at an attorney visit or a dental examination, supervisory officials may approve restraining him with his hands cuffed in front of his body and attached to a waist chain. In the context of an environment where such restrictive conditions are a daily occurrence, even for administrative reasons absent an inmate's misconduct, the court cannot find that the additional, temporary imposition of ambulatory restraints, which cause no physical injury and allow freedom of movement, is so atypical as to "impose a significant hardship in relation to the ordinary incidents of life."

11

Beverati, 120 F.3d at 504. Accordingly, the court finds that Smith had no protected liberty interest and, thus, the defendants did not violate his right to due process.[12]

## VIII.

For the reasons stated above, the court denies the defendants' motion for summary judgment as to Smith's excessive force and assault and battery claims against Davis. The court grants the defendants' motion for summary judgment as to all of Smith's other claims.

**ENTER**: September 1, 2011.

United States District Judge

---

[12] To the extent Smith alleges that his placement in ambulatory restraints was a violation of his substantive due process rights, it also fails. It is well established that after conviction, the Eighth Amendment "serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified." Whitley v. Albers, 475 U.S. 312, 327 (1986). Any protection that "substantive due process" affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment." Id. Smith was a convicted felon at the time of the challenged use of force. Thus, the court finds it appropriate to consider his ambulatory restraints claim exclusively under the Eighth Amendment and will dismiss his substantive due process claim.